RAMONEDA BROS. *v.* W. T. LOGGINS.

[42 South. Rep., 669.]

1. MORTGAGES. *Payment. Assignment.*

A vendee of land subject to two trust deeds, the first of which he is under contract to *pay* as part of the consideration of his purchase, takes nothing by an assignment of the note secured thereby on payment of the full amount due thereon, and cannot enjoin foreclosure by the beneficiaries of the second deed of trust.

2. SAME. *Volunteer.*

A stranger who in such case takes the assignment at the instance of the vendee, and without consideration, is a mere volunteer, and has no greater right than the vendee would have had if the assignment had been made to him.

FROM the chancery court of Leflore county.

HON. PERCY BELL, Chancellor.

Loggins, the appellee, was complainant in the court below; Ramoneda and others, doing business as Ramoneda Bros., were defendants there. From a final decree in complainant's favor the defendants appealed to the supreme court.

One Schack owned certain lands, on which he gave two trust deeds—the first to one Lomax, embracing all the land, and the second to Ramoneda Bros. (the appellants), on a part of the land. He afterwards sold the entire tract for $3,210 to one

Peteet, who by the terms of the sale agreed to pay $100 cash and out of the balance of the purchase money remaining in his hands to pay off certain outstanding indebtedness against said land due to the Delta & Pine Land Company and the debt secured by the Lomax trust deed, but the indebtedness due appellants was not assumed by Peteet, since Schack warranted it as having been paid, and agreed that Peteet should not pay any balance remaining due to Schack till the Ramoneda trust deed was satisfied. Peteet paid off the Lomax note and had it assigned to him, but afterwards had Lomax to erase this transfer, which was written on the trust deed, and endorse on the deed an assignment of it to Loggins. Loggins, as holder of the Lomax note, then had the trustee in the deed of trust securing same to foreclose, and at the foreclosure sale became the purchaser, taking a deed from the trustee. Peteet and Loggins then paid off the indebtedness due the Delta & Pine Land Company and had these notes assigned to Loggins. Appellants afterwards advertised the land for sale in satisfaction of their trust deed, whereupon appellee filed a bill in equity to enjoin the sale, praying the cancellation of appellant's trust deed. The case was formerly in the supreme court and was decided on the demurrer to the cross-bill of appellants. See *Ramoneda Bros.* v. *Loggins* (Miss.), 39 South. Rep., 1007.

*S. R. Coleman,* for the appellants.

The note secured by the Lomax trust deed must be treated as paid, since payment thereof was a part of the consideration of Peteet's purchase. The fact that an assignment was taken in the name of Loggins, a mere volunteer, who parted with no consideration, does not change the aspect of the transaction. Sheldon on Subrogation, pp. 71, 72, 74.

*Gwin & Mounger,* for appellee.

Peteet had the right to do through Loggins what he had the right to do for himself. The law on this point was discussed

in our brief on the former appeal, to which we refer the court, and was settled by the decision in this case on that appeal. As said in that case, "the facts stated might well subsist with perfect fairness," and the evidence shows perfect frankness on the part of both Loggins and Peteet. Appellants held a subordinate lien on the land and by applying the principle of subrogation they were placed in no worse attitude than they originally occupied. "Conceding that the sum or encumbrance had in point of fact been fully paid, the exhibit to the cross-bill shows that the payment was made under the guaranty and upon the express representation that nothing remained due or unpaid on the trust deed held by appellants. If the debt was so paid, the right of subrogation is unquestionable." See *Ramoneda Bros.* v. *Loggins,* 39 South. Rep., 1008. There can be no question that the Lomax note was taken up relying upon the representations and warranty of Schack that the Ramoneda debt had been paid. Peteet and Loggins testify to this and it is uncontradicted. Peteet took the precaution to have the note assigned to Loggins, in order to protect Loggins, who was financing the deal, but had he paid his own money and not taken an assignment the result would have been the same.

Argued orally by *S. R. Coleman,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The former opinion in this case dealt with the pleadings on demurrer, the merits of the case, of course, not being considered. When the case got back to the court below, it was tried on full proof. From this proof certain facts are clear: First, that W. T. Loggins never paid anything to Schack on the purchase money on this land, at the time the purchase was made; second, that he never paid anything to Lomax on the trust deed held by him; third, that he had, at the time, no interest in the land whatever; fourth, that Peteet paid the whole purchase money, in accordance with the terms of the deed from Schack to him,

to Lomax, and satisfied, paid off, and extinguished that trust deed; fifth, that it was the purpose and intention both of Schack and Peteet to so pay off and extinguish said Lomax trust deed, and not to keep it alive in any way, or to have the note which said trust deed secured assigned to Peteet, or to Loggins, or to anybody else; sixth, that Peteet not only had constructive notice of the Ramoneda trust deed from the record of such trust deed, but actual notice, as shown by the recitation in the deed from Schack to him, in which deed it was expressly stated that Peteet was to assume and pay off this very indebtedness to Lomax, and was not to pay the difference between that and other indebtedness named, due to the Delta & Pine Land Company, and the sum of $3,110 named, until the trust deed of Ramoneda Bros. had been satisfied and canceled of record, this last fact being twice mentioned in said deed; seventh, that the plain purpose of the assignment of the note of Lomax to Loggins was to cut out and defeat the Ramoneda trust deed, by an arrangement to that effect made between Peteet and Loggins. Loggins got nothing when he got the note assigned to him, for the note already had been paid off under express language of the deed, showing the plain purpose to have been, as stated, not to have the note assigned, nor to keep it alive in any way in favor of any person then interested, but simply and merely to pay off and discharge the note and the trust deed held by Lomax. Under these facts this case is covered perfectly by the case of *Howell* v. *Bush,* 54 Miss., 437, and *Good* v. *Golden,* 73 Miss., 91 (19 South. Rep., 100; 55 Am. St. Rep., 486). In the case of *Cansler* v. *Sallis,* 54 Miss., 446, the decision turned upon the express agreement that the security was to be kept alive. On the proof made in this case there is no possible room for the play of the doctrine of subrogation, equitable or conventional. Loggins was an absolute stranger, and a mere volunteer. As stated in *Trust Co.* v. *Peters,* 72 Miss., 1070 (18 South. Rep., 497; 30 L. R. A., 829), equitable subrogation can never be invoked in favor of a

pure volunteer. As stated in the case of *Howell* v. *Bush,* the court cannot make contracts for parties, and if parties elect to have securities paid off discharged and canceled, and everything in the case shows that to have been the purpose, and that purpose was actually effectuated by what was done in the case, parties will not be allowed to change that election and insist upon a different purpose and a different contract.

*It follows, from these views, that the decree of the court below is reversed, and the cause remanded, with instructions to the court below to allow the amended cross-bill to be filed, to dissolve the injunction granted in favor of appellee, and to proceed further in accordance with this opinion.*