David A. Beeks et al. *v.* John M. Rye, Executor.

1. Decrees. *Final. Interlocutory.*

    A decree of a chancery court ordering the sale of lands, directing the payment of costs out of the proceeds, allowing a solicitor's fee therefrom, the sum to be fixed on the coming in of the report of sale, and providing that the remainder be distributed "in accordance with the interest of defendants as ‿shown in the petition" for sale, is an interlocutory and not a final decree.

2. Devises. *Rule against perpetuities.*

    A devise of land to a tenant for life, the same, after the termination of the life estate, to be sold and the proceeds divided between testator's children then alive and his grandchildren, being descendants of his children then dead, is valid, and does not violate the rule against prepetuities.

FROM the chancery court of Monroe county.

HON. BAXTER McFARLAND, Special Chancellor.

This case arose out of a contest over the final account of John M. Rye, surviving executor of the last will and testament of Samuel Beeks, deceased. Exceptions were filed to the account by David A. Beeks and others, who were interested in the estate. The court below overruled the exceptions, and the exceptors appealed to the supreme court.

Samuel Beeks died testate in January, 1857. After devising a considerable portion of his estate to his wife, Malinda, for the term of her natural life, his will contained the following clause: "And at her death, should she survive me, I will and direct that all the property, both real and personal, hereinbefore devised and bequeathed to my said wife, shall by my executors hereinafter named, or their executors or administrators, be sold on a twelve months' credit, and the money arising from the sale of said property, after paying all legal expenses in and about the same, shall be equally divided amongst and between all my children who may be then living, and the child or children of any one or more of my children, who (if any) may then be dead, share and share alike, the child or children of any one of my dead children to take the share which his or her, or their father or mother would have taken had he or she been then living."

At the time of the execution of the will, in December, 1856, the testator had ten children, all of whom survived him. But four of these did not survive their mother, Malinda, the life tenant of the estate, who died in August, 1896. Of the four who did not survive the life tenant, Mariah died in 1859 leaving an infant child, which died in 1863, and her husband, John M. Rye (who had qualified as executor), who again married and had born unto him by his second marriage two sons, Isaac W. Rye and F. L. Rye, who survived the life tenant. Another child of testator who did not survive the life tenant was James A. Beeks, who died in 1864, leaving a widow, Paralee Beeks

(now Paralee Studdard), yet living, and an infant child, James Beeks, who died in 1867. The other two children, who died during the continuance of the life estate, had children living at the time of the death of the life tenant, and as to these there is no controversy here.

When the life tenant, Malinda E. Beeks, died in 1896 the surviving executor, appellee here, filed his bill asking a sale of the property devised to Malinda for life, and division of the proceeds in accordance with the terms of the will. This bill was filed October 15, 1896, publication was made for the non-resident distributees and process served on the resident ones. At the following term of the court, none of the defendants appearing, a decree was rendered February 27, 1897, ordering the property sold on a twelve months' credit, directing the executor to pay the costs out of the proceeds. The decree further provided that the executor's solicitors be allowed a reasonable fee, the same to be fixed on the coming in of the report, and concluded with a provision "that the remainder of the proceeds of said property be distributed in accordance with the interests of the defendants as shown in said petition," and the executor was directed "to report all his actings and doings to the court at the next succeeding term after said sale, for confirmation."

In November, 1897, the property was sold as directed, and report made to the court at its February term, 1898, at which time the sale was confirmed. The proceeds of this sale did not come to the hands of the executor until the first part of the year 1899, when he distributed twenty-five dollars each to Isaac W. Rye and F. L. Rye, and fifty dollars to Paralee Studdard, together with fifty dollars each to the proper distributees, seven in number. When the executor's final account was filed in March, 1899, all the distributees under the will, children and grandchildren of the testator, appeared and filed exceptions thereto, objecting to an allowance for the sums paid Isaac W. Rye and F. L. Rye and Paralee Studdard, because they were neither children nor grandchildren of the testator, Samuel

Beeks, not even related by blood in the remotest degree, and not entitled to any distributive share under the will.

*Walker & Tubb,* for appellants.

The decree of February 27, 1897, was interlocutory, and not final. It was the first order taken in a case for partition, ordering a sale of property and division of proceeds, reserving to the court the question of fees and costs, especially as to the amount to be allowed for these, and the right to affirm or disaffirm the report of the executor as to his actings and doings in making the sale, and his proceedings under the decree. This court gave a definition of a final decree in the case of *Cook* v. *Bay,* 4 How. (Miss.), 503, in the following language: "A final decree is one which makes an end of the case and decides the whole matter in controversy, costs and all, leaving nothing for the court to do." Can it be successfully contended that this decree decided everything and left nothing for the court to do? Does it measure up to the above definition of a final decree?

The decree was rendered in a partition proceeding, and the first decree, or order of sale, in such proceedings is generally regarded as merely interlocutory. Freeman on Co-tenancy & Par. (2d ed.), secs. 519-544; 5 Am. & Eng. Enc. L., pp. 371-373, note Partition; *Ames* v. *Williams,* 73 Miss., 772.

Appellee seeks to shield himself in this clause of the decree: "That the remainder of the proceeds of said property be distributed in accordance with the interests of the defendants as shown in said petition." He contends that as Isaac W. Rye and F. L. Rye and Paralee Studdard were made defendants, and brought into court, they were entitled to distribution under that clause of the decree just quoted; that this language of the decree ascertained and fixed the distributees under the will without naming them; that this decree is final, and it is too late now for appellants to object or complain, even though the court was wrong in so construing the will of Samuel Beeks.

But the petition, by reading the will as a part of it, shows

that these persons, although defendants, are not objects of the testator's bounty. They had no interest in the funds arising from this sale. The mere fact of making them defendants, and bringing them into court, cannot have the effect of changing the intent and purpose of the testator as shown by the plain provisions of the will.

Under the will it was manifestly the intention of the testator that after the expiration of the life estate none were to be the objects of his bounty except his children living at the death of the life tenant and his immediate fatherless or motherless grandchildren living at her death. It was his purpose evidently that a more remote degree of kindred should not take, not even his great-grandchildren whose parents might then be dead. In our view of this case *Dunlap* v. *Fant,* 74 Miss., 197, is conclusive. See, also, *Kirby* v. *Calhoun,* 8 Smed. & M., 462.

*Gillaylen & Leftwich,* for appellee.

The decree of February 27, 1897, was a final decree fixing the status of the two Ryes and Mrs. Studdard under the will, or as owners of interests in the property, so that till reversed the executor was authorized and required to make distribution to them like the other devisees.

The children at the testator's death took vested interests in the land. Schouler on Wills, secs. 529, 562, 564, 565; *Dunlap* v. *Fant,* 74 Miss., 197. The decree of February 27, 1899, adjudicated everything material to the determination of the cause, and when executed according to its terms, gave all the relief which could be afforded. *Humphreys* v. *Stafford,* 71 Miss., 135, and cases cited in final paragraph of opinion; Black on Judgments, 43; *Ledyard* v. *Henderson,* 46 Miss., 260; *Cromwell* v. *Craft,* 47 Miss., 44; *McDonald* v. *McDonald,* 68 Miss., 689; *Robertson* v. *Johnson,* 40 Miss., 500.

The will of Samuel Beeks of course was ambulatory as long as he lived, but the moment he died the interests of all the devisees became at once vested. The law favors and presumes

a vested estate. Schouler on Wills, secs. 529, 562, 563, 564, 565; *Foster* v. *Holland,* 56 Ala., 474. Vested interests are not divested except preceding events are all fulfilled. Schouler on Wills, secs. 562, 565, 609, 615; *Foster* v. *Holland,* 56 Ala., 474.

The devisor's children were all living when the will was made, and when testator died. His only purpose, gathered from reading the will, was to prevent his estate from passing *per capita* and not *per stirpes.* The intent of the testator is of course the pole star on construction.

The construction contended for by appellants would be to cut out grandchildren of decedent's children. Children don't mean grandchildren. *Tucker* v. *Stiler,* 10 Ga., 196; *Hubbard* v. *Selser,* 44 Miss., 705; *Gray* v. *Bridgeforth,* 4 Ga., 312; Schouler on Wills, sec. 533.

Should the construction contended for by appellants be placed upon the will, it would be void as a perpetuity. The statute was then as it is now, "that any person may make a conveyance or a devise of lands to a succession if donees then living not exceeding two," etc. Code of 1857, § 1, art. 3. Applying this statute to the vested interest of Mariah Rye, *nee* Beeks, at the time of her father's death, see what follows: The life estate goes to the mother, and the remainder interest of her one-tenth to her the instant her father dies. It is vested of course. Mariah Beeks dies intestate, and her interest is divested out of her and vests instantly, by the terms of the will, in her daughter Elizabeth. The will goes no further, and it does not attempt to go further, for it could not. The construction contended for that under the will Elizabeth Rye's interest becomes divested out of her at her death and vested in the other living children of Samuel Beeks, by force of the will, would carry it a step further than the statute against perpetuities would allow it in any case to go. Elizabeth, the child, however, becomes vested with the interest of Mariah, the mother, and there the will stops. *Powell* v. *Brandon,* 24 Miss., 343; *Jordan* v. *Roach,* 32 Miss.,

481; *Dibrell* v. *Carlisle,* 48 Miss., 691; *Caldwell* v. *Willis,* 57 Miss., 555.

When the interest of Mariah Rye vested in her child, Elizabeth, the will no longer controls it. It becomes indefeasible in Elizabeth, and at her death it descended by the law of descents to her lawful heirs, her two brothers then living, F. L. Rye and Isaac Rye. *Cannon* v. *Barry,* 59 Miss., 289.

So likewise when James A. Beeks died, his vested interest in the remainder of the lands became divested, and perforce the will vested in his infant son, James Beek, and vested there for all time, as far as the will could under the law control it. At the death of the child, for want of other heirs, it passed to his mother by the law of descents.

It has been held by our courts that our statute against perpetuities (code 1857, sec. 1, art. 3) is not a formula that must be literally followed, but a rule of limitation applicable to the devolution of estates by will or deed. *Jordan* v. *Roach,* 32 Miss., 481, and other cases supra. See Judge Clayton's article on Limitation of Estates, Geo. Dig., 497.

Argued orally by *W. B. Walker,* for appellants, and by *Geo. J. Leftwich,* for appellee.

WHITFIELD, J., delivered the opinion of the court.

The decree of February 27, 1897, was not a final decree. It did not, properly construed, direct to whom the proceeds of the sale were to be paid. Such proceeds were to be paid to the parties entitled, "and who they were the will pointed out." It was for the court to determine this, upon the coming in of the report of sale. The effect sought to be given the words "interests of the defendants as shown in said petition," can only be supported by the narrowest and most literal construction, and is not the reasonable construction. The entire petition, and the will, an exhibit to and part of it, must be looked to. The decree was interlocutory. It falls within the principle of *Gilleylen* v. *Martin,* 73 Miss., at pp. 700, 701.

*Lowry* v. *McMillan,* 35 Miss., 147, is inapplicable to the facts of this case.

It is clear that Isaac W. Rye and F. L. Rye and Paralee Studdard were not entitled to distribution. We see no ambiguity in the will. Its declaration is that children, or children of a deceased child taking *per stirpes* and not *per capita,* living at the death of the mother, the life tenant, should receive the proceeds of the sale of the land. It was perfectly competent to make such a will. Learned counsel for appellee ingeniously argue that to so construe the will violates the rule against perpetuities, saying that Elizabeth Rye and James Beeks, the grandchildren, had indefeasible vested estates, which descended, upon their deaths, to their heirs. This is the fallacy in counsel's view. They had estates defeasible upon their dying before the life tenant died. Counsel mistake the quality of the estates they had in this regard. Their defeasible estates being defeated by the fact of their deaths while the life tenant lived, went to the other children and grandchildren, not being thus carried a step further than the rule against perpetuities would permit, but because the quality of their estates, being such as made them so defeasible, and the event having happened which made them determine, the said grandchildren dying in the lifetime of the life tenant, had nothing to transmit by descent or devise. What they had were vested interests, but defeasible as vested. The quality of defeasibility stamped on their estates by the will, attached to them in their hands. If they lived till the death of the life tenant, the interests became indefeasible; if not, their interests were determined at their deaths. The case of *Dunlap* v. *Fant,* 74 Miss., 197, is controlling against appellee.

Testator could make this sort of a will. We cannot make a will for him. We can only construe the one he has made, in the clear light of his intention, as disclosed by the whole will, looking to his environments.

*Decree reversed and cause remanded for decree in accordance with this opinion.*